# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

JO LEVITT,                                    )
                                              )
      Plaintiff,                     )    Case No. 06-CV-00818-W-DW
                                              )
v.                                            )
                                              )
MERCK SHARP & DOHME CORP.,                    )
                                              )
      Defendant.                     )

# ORDER

Before the Court is the Defendant Merck Sharp & Dohme Corporation's (the "Defendant") Motion for Judgment on the Pleadings Pursuant to the Statute of Limitations (the "Motion"). See Doc. 36 (Motion); Doc. 37 (Suggestions in Support). The Plaintiff Jo Levitt (the "Plaintiff") filed suggestions in opposition (Doc. 42), and Defendant filed a reply brief (Doc. 50). As explained below, the Motion is GRANTED because Plaintiff failed to timely file this lawsuit.

I.[1]

Defendant developed, manufactured, and distributed the pharmaceutical drug Vioxx. Complaint ("Compl.") at ¶ 2. In 1999, Plaintiff's physician prescribed Vioxx for Plaintiff. Id. at ¶ 1. Plaintiff ingested Vioxx from approximately 1999 through 2001 or 2002. On March 10, 2000, and on May 26, 2000, Plaintiff suffered cardiovascular injuries which resulted in a double bypass coronary surgery. Amended and Supplemental Plaintiff Profile Form ("ASPPF"), at p. 3; see also Doc. 42-3, p. 3-4.

On September 29, 2006, Plaintiff filed this lawsuit against Defendant. The Complaint alleges that Vioxx caused Plaintiff's injuries and asserts the following claims against Defendant:

---

[1] The following facts are taken from Plaintiff's Complaint, from documents that are "necessarily embraced" by the Complaint, and from "materials that are part of the public record." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (recognizing that such documents may be considered in resolving a motion for judgment on the pleadings). Only the facts necessary to resolve the Motion are discussed below, and those facts are simplified to the extent possible.

Count I—Strict Liability; Count II—Negligence; Count III—Negligence Per Se; Count IV—Breach of Express Warranty; and Count V—Breach of Implied Warranty.

On November 8, 2006, this case was conditionally transferred to the United States District Court for the Eastern District of Louisiana for inclusion in the so-called Vioxx Multidistrict Litigation ("Vioxx MDL"). Doc. 42-3, p. 4. The Vioxx MDL did not resolve this case, and it was remanded back to this Court on October 14, 2016. Doc. 10-1, p. 4.

Following remand, Defendant filed the pending Motion for Judgment on the Pleadings. Defendant argues that Plaintiff failed to file this lawsuit within the applicable five year statute of limitations. Specifically, Defendant argues this suit is time-barred because it was filed more than five years after (1) Plaintiff's injuries were diagnosed, and (2) published reports showed a possible link between Vioxx and cardiovascular injuries. Plaintiff presents several arguments in opposition, including that the statute of limitations is not triggered until the causal connection is "well accepted, well known and well publicized." The parties' arguments are addressed below.

II.

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings. See Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same standard as Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009). Under that standard, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim may be dismissed on the pleadings if it is barred by the statute of limitations. See Fed. R. Civ. P. 12(h)(2); Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004). To

determine timeliness, the "court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." See Porous Media Corp., 186 F.3d at 1079 (citations and quotations omitted).

III.

Under Missouri law, an action "for any . . . injury to the person or rights of another, not arising on contract" must be filed within five years of when the cause of action accrues. Mo. Rev. Stat. § 516.120(4); Graham v. McGrath, 243 S.W.3d 459, 462 (Mo. Ct. App. 2007).[2] A cause of action does not accrue "when the wrong is done . . . but when the damage resulting therefrom is sustained and is capable of ascertainment[.]" Mo. Rev. Stat. § 516.100. "[T]he statute of limitations begins to run when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury. This is an objective test." Huffman v. Credit Union of Texas, 758 F.3d 963, 967 (8th Cir. 2014) (applying Missouri law) (citations and quotations omitted).

"If, as here, a claim is based on a physical ailment, it is sustained and capable of ascertainment, at the latest when (i) it is diagnosed, and (ii) a theory as to its cause is ascertainable." Lewellen v. Novartis Pharm. Corp., 2015 WL 736232, at * 2 (W.D. Mo. Feb. 20, 2015) (quoting Buttice v. G.D. Searle & Co., 938 F. Supp. 561, 566-67 (E.D. Mo. 1996)); see also Lockett v. Owens-Corning Fiberglas, 808 S.W.2d 902, 907 (Mo. Ct. App. 1991). A theory is ascertainable when "the medical community [becomes] aware . . . of a possible link between the conditions for which plaintiff seeks recovery and [the product at issue]." Buttice, 938 F. Supp. at 567; see also King v. Nashua Corp., 763 F.2d 332, 333 (8th Cir. 1985) ("Although King

---

[2] The parties agree that Missouri law applies to this case and Plaintiff does not dispute that her claims are governed by a five year statute of limitations.

may not have discovered her injuries were likely caused by the thermal labels until 1982, the medical community was aware of the causation link as early as 1975.").

IV.

Plaintiff filed this lawsuit against Defendant on September 29, 2006. After reviewing the record, the Court finds that Plaintiff's claims accrued more than five years before she filed this case; stated differently, Plaintiff's claims accrued prior to September 2001. Therefore, and as explained below, Plaintiff's claims are time-barred.

First, Plaintiff's cardiovascular injuries were diagnosed by a physician on March 10 and May 26, 2000. Second, a theory as to the cause of these injuries was ascertainable before September 2001. In particular, Defendant has produced several articles and studies that were published before September 2001, and which showed that "the medical community was aware . . . of a possible link between the conditions for which plaintiff seeks recovery and [Vioxx]." Buttice, 938 F. Supp. at 567; Def.'s Suggs. in Support, p. 4-5 (citing pre-September 2001 sources).

By way of example, on April 29, 2000, The Star-Ledger (Newark, New Jersey) reported that "[a] pall was cast over Merck & Co. yesterday after investors reacted to a study that found its hot-selling Vioxx painkiller—the drug maker's most important new product—caused a higher incidence of strokes or heart attacks than a generic medicine [and] also detected statistically 'significant' cardiovascular problems." Doc. 37-1, p. 2. On August 22, 2001, the Wall Street Journal cited a study which reported that Vioxx use "might lead to increased cardiovascular events [and that] patients taking Vioxx had more than twice as many heart attacks, strokes and other cardiovascular events as patients getting an older, generic arthritis drug[.]" Doc. 37-8, p. 2-3.

Indeed, as early as July 23, 2001, lawsuits were being filed for injuries allegedly caused by the ingestion of Vioxx. On that date, a lawsuit was filed in the Superior Court of California which alleged that Vioxx caused "serious medical problems such as serious cardiovascular events and death." Doc. 37-11, p. 2. The Complaint cited "a large study . . . in 2000 . . . [that] link[ed] the subject drug formulations to . . . serious cardiovascular events[.]" Id., p. 6.

Under these facts, the Court has little difficultly concluding that before September 2001, Plaintiff's alleged injuries were (i) "diagnosed, and (ii) a theory as to [their] cause [was] ascertainable." Lewellen, 2015 WL 736232, at * 2; Ahearn v. Lafayette Pharmacal, Inc., 729 S.W.2d 501, 504 (Mo. Ct. App. 1987) (finding that claim was capable of ascertainment when plaintiff knew that medical dye "was a possible cause of her condition"). Consequently, this lawsuit is time-barred because Plaintiff filed it more than five years after her claims were ascertainable. Mo. Rev. Stat. §§ 516.100, 516.120(4); Lewellen, 2015 WL 736232, at * 2; Buttice, 938 F. Supp. at 567.

V.

Plaintiff's arguments to the contrary are unavailing, and her primary arguments are disposed of below. Plaintiff first argues that the Motion itself is untimely because the Vioxx MDL ordered that all dispositive motions be filed by June 27, 2016. Federal Rule of Civil Procedure 12(c), however, provides that a motion for judgment on the pleadings may be filed "[a]fter the pleadings are closed—but early enough not to delay trial[.]" The pleadings are closed in this case, and trial is not set until August 2017. Moreover, Plaintiff has not shown prejudice as a result of the alleged untimely filing, or that this Court is bound by the deadlines set by the MDL. Under these circumstances, the Court finds that Defendant timely filed the Motion.

Plaintiff's second argument is that the "Vioxx MDL has already determined that September 30, 2004 is the triggering date for the statute of limitations." Doc. 42, p. 6-7. This argument is also rejected. As Defendant points out, the MDL ruled that "**at the very latest** . . . [the] statute of limitations began to run on September 30, 2004." See In re Vioxx Prod. Liab. Litig., 522 F. Supp. 2d 799, 808, 810, 814 (E.D. La. 2007) (emphasis supplied). This ruling does not establish that the statute of limitations could not begin at an earlier date, and Plaintiff's argument to the contrary is disingenuous. Additionally, to the extent this ruling is even relevant, the MDL did not issue it under Missouri law; instead, Plaintiff concedes that the MDL was applying Pennsylvania, California, Indiana, Texas, Kentucky, Tennessee, and Illinois law. Doc. 42, p. 6.

Plaintiff's third argument is that her claims were not capable of ascertainment before April 29, 2002, which is when she stopped taking Vioxx. Doc. 42, p. 7-8 (citing Mo. Rev. Stat. § 516.100). This argument is rejected for all the reasons set forth above, including the pre-September 2001 articles and studies that discussed the possible dangers of Vioxx. See, e.g., Mahanna v. U.S. Bank Nat'l Assn., 747 F.3d 998, 1004 (8th Cir. 2014) ("The receipt of information sufficient to cause a reasonable person to inquire further as to the existence of a wrong or the existence or extent of damages triggers the statute of limitations.") (applying Missouri law); Smith v. Brown & Williamson Tobacco Corp., 1999 WL 33944680, at * 13 (W.D. Mo. Jan. 29, 1999) ("Plaintiff's claims do not clearly qualify as continuing torts. The sale of a defective product is a one-time occurrence.").

Plaintiff also argues that her claims were not capable of ascertainment by September 2001 because Defendant fraudulently concealed the dangers of Vioxx. Doc. 42, p. 8 (citing and quoting Mo. Rev. Stat. § 516.280). As to this argument, the Court agrees with Defendant that a

party "does not fraudulently conceal a cause of action by denying a plaintiff's causal theory. It would be absurd to require a defendant to admit causation before the statute begins to run . . . the fact that [Defendant] was publicly disputing in 2000 and 2001 the theory of causation that Plaintiff now espouses in this lawsuit **underscores** its 'ascertainability' and undercuts any notion of fraudulent concealment." Doc. 50, p. 7 (emphasis in original).

Finally, Plaintiff appears to argue that the statute of limitations did not begin to run until her theory of causation was "well accepted, well known and well publicized" in the medical community. See Doc. 42, p. 10-13. This argument ignores case law that only requires knowledge of "a possible link" between the injury and product. Buttice, 938 F. Supp. at 567. Complete agreement in the medical and/or scientific community is exceedingly rare, and "[t]he statute of limitations would largely be eviscerated if a cause of action accrued only after the formation of scientific consensus." Doc. 50, p. 4.

For these reasons, and for the additional reasons stated by Defendant, the Court rejects all of Plaintiff's arguments that her claims are timely.

## VI.

For the foregoing reasons, it is hereby ORDERED that:

(1) Defendant's Motion for Judgment on the Pleadings Pursuant to the Statute of Limitations (Doc. 36) is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE; and

(2) The Clerk of Court is directed to terminate all other pending motions, and to then mark this case as closed.

IT IS SO ORDERED.

Date: April 13, 2017                                          /s/ Dean Whipple
                                                                                                         Dean Whipple
                                                                                            United States District Judge